UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

JOHNATHAN MENA,

                       Plaintiff,

        -against-

THE CITY OF NEW YORK, DR. IOSIF
SHPITS, DR. LESLEY JEAN GILLES, DR.
AMAN BAKSHI, DR. KHIN KYU, ARLIE
MASSILLON, P.A., JEANTY FRANCOIS, P.A.,
TOLULOPE OJUDUN, P.A., DR. S. ALAM, and
CORIZON,

                       Defendants.
--------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**13-CV-2792 (NGG) (LB)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pro se Plaintiff Jonathan Mena brings this action against eight individual medical

professionals ("Individual Defendants") who interacted with Plaintiff while he was incarcerated

at the Rikers Island Correctional Facility ("Rikers Island") and the Brooklyn Detention Complex

("BKDC"), the City of New York (the "City"), and Corizon, the City's contractor for medical

services at Rikers Island (collectively, "Defendants"). (Compl. (Dkt. 1); Defs.' Mem. of Law in

Supp. of Mot. to Dismiss ("Defs.' Mot.") (Dkt. 42) at 1.) Plaintiff asserts claims pursuant to 42

U.S.C. § 1983 for deliberate indifference to medical needs in connection with Individual

Defendants' decision to reduce his pain medications and not to refer him to a specialist. The

court also construes the Complaint as bringing claims of negligence and medical malpractice

under New York law. Defendants have moved to dismiss. (Defs.' Mot.) For the reasons

explained below, Defendants' motion is GRANTED in part and DENIED in part.

# I.    BACKGROUND

## A.    Facts

The court takes the following allegations by Plaintiff as true for purpose of Defendants' motion to dismiss.[1]

On December 9, 2011, Plaintiff, then incarcerated at Rikers Island, arrived at the on-site medical clinic seeking treatment for chronic joint and muscle pain. (Compl. at 7; Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") (Dkt. 43) at 2.)[2] A doctor at the clinic prescribed Plaintiff with the drug Naproxen (500 mg) to be taken twice a day, one pill each time, i.e., two pills total per day. (Pl.'s Opp'n at 2.) Three days later, Plaintiff returned to the clinic because the prescribed medication was insufficient to treat his pain. (Id.) The doctor then prescribed an additional drug Robaxin/Methocarbamol ("Robaxin") (500 mg) to be taken twice a day, two pills each time, i.e., four pills total per day. (Id.) Hence, subsequent to this December 12, 2011,

---

[1] The facts are drawn primarily from allegations in the Complaint and Plaintiff's opposition to Defendants' motion to dismiss. Defendants attached as an exhibit to their motion a copy of Plaintiff's 625-page medical records ("Medical Records") from Rikers Island and BKDC, and relied on its content in support of their motion. (Defs.' Mot. at 2-13.) Defendants urge the court to consider the Medical Records incorporated by reference into the Complaint, or, in the alternative, to convert Defendants' motion to dismiss to a motion for summary judgment via Federal Rules of Civil Procedure 12(d) in order to consider the same. (Id. at 13-14.) In opposing Defendants' motion to dismiss, Plaintiff relied on substantially the same portions of the Medical Records as did Defendants. (See generally Pl.'s Opp'n to Defs.' Mot. to Dismiss (Dkt. 43).) In light of Plaintiff's pro se status and the mandate to read pro se submissions liberally, the court will deem the factual allegations in Plaintiff's opposition brief, which primarily include citations to his Medical Records, to supplement the Complaint. See Craig v. First Web Bill, Inc., No. 04-CV-1012 (DGT), 2004 WL 2700128, at *1 n.3 (E.D.N.Y. Nov. 29, 2004) (considering facts alleged in pro se plaintiff's opposition to defendants' motion to dismiss as supplementing the complaint over defendants' objection); see also Johnson v. Wright, 234 F. Supp. 2d 352, 356 (S.D.N.Y. 2002). Because Plaintiff appears to rely on the Medical Records in drafting his Complaint (see Compl. at 17, 20, 25), and because the allegations in Plaintiff's opposition, which now supplement the Complaint, draw heavily on the same, the court will deem the Medical Records incorporated by reference. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (noting that on a motion to dismiss, courts may consider documents incorporated by reference as well as documents upon which a complaint so heavily relies that they are integral to the complaint).

[2] Plaintiff used a pro se form complaint to initiate the instant action, appending additional pages to end of the form with further allegations. The pro se form contains enumerated paragraphs, but the additional pages do not. For ease of reference, the court will cite to the page number of the electronically filed document. Because Plaintiff's opposition brief does not contain page numbers, the court will likewise reference the page number of the electronically filed document in its citations.

clinic visit, Plaintiff was prescribed a total of two pills of Naproxen (500 mg) and four pills of Robaxin (500 mg) per day. This is the dosage at which Plaintiff argues his pain medications[3] should have been maintained. (See, e.g., id. at 2, 3, 18-19; see also, e.g., Compl. at 3, 17, 27.) Plaintiff alleges that Individual Defendants' failure to keep the prescription at this level left him in intense pain. (Compl. at 3 ("I would spend nights hollering, aching, not being able to sleep.").)

On January 6, 2012, Plaintiff returned to the clinic seeking a renewal of his pain medications, and was examined by a physician's assistant, Defendant Tolulope Ojudun, P.A. ("P.A. Ojudun"). The Naproxen prescription was kept at the same dosage level, but P.A. Ojudon halved Plaintiff's prescription for Robaxin from four pills per day to two. (Pl.'s Opp'n at 2.) Plaintiff protested, but to no avail. (Id.) Three days later, Plaintiff returned to the clinic and was seen by P.A. Ojudun again. (Id.) Plaintiff complained that the reduction in the Robaxin dosage was causing him pain. (Id.) P.A. Ojudon then agreed to restore the Robaxin prescription to four pills per day. (Id.)

On January 24, 2012, Plaintiff sought to renew of his pain medications at the clinic. (Id.) During this visit, he was attended to by Defendant Jeanty Francois, P.A. ("P.A. Francois"). (Id.) P.A. Francois lowered Plaintiff's Robaxin prescription by half—from four pills to two pills—per day. (Id.) Plaintiff complained about the reduction, and engaged in a verbal argument with P.A. Francois as a result. (Id. at 2-3.) However, P.A. Francois did not change his mind and maintained the prescription at two pills per day. (Id.) P.A. Francois also referred Plaintiff for X-

---

[3] According to Defendants, Naproxen is a "nonsteroidal anti-inflammatory drug," and Robaxin is a "muscle relaxant." (Defs.' Mot. at 2 n.3.) Plaintiff isolates these two drugs, among others that he was prescribed during the period relevant to the Complaint, as medication addressing his joint and muscle pain, and the court will do the same in this Memorandum and Order. (See, e.g., Pl.'s Opp'n at 2, 10.)

rays, which did not reveal any significant issues. (Medical Records (Decl. in Supp. of Defs.' Mot. to Dismiss (Dkt. 48), Ex. B) at 430, 498-500.) Repeat X-rays of Plaintiff's cervical spine performed on January 27, revealed degenerative changes. (Id. at 497.)

Plaintiff visited the clinic on February 2 for another renewal of his medications. (Pl.'s Opp'n at 3.) Plaintiff spoke with P.A. Ojudun, and requested that his Robaxin prescription be restored to four pills per day. (Id.) Ojudun obliged. (Id.)

On February 27, Plaintiff saw Defendant Dr. S. Alam ("Dr. Alam") for another renewal of his medications. (Id.) Dr. Alam halved Plaintiff's Robaxin prescription again. (Id.) Plaintiff complained, but Dr. Alam did not change his decision. (Id.) When Plaintiff saw P.A. Francois on March 6 to renew his pain medications and ask that the Robaxin prescription be restored, P.A. Francois renewed the medications but declined to increase the dosage from that prescribed by Dr. Alam. (Id.)

Plaintiff was transferred from Rikers Island to the Brooklyn Detention Complex on March 23, 2012. (Medical Records at 385; see also Pl.'s Opp'n at 9.) On March 27, Plaintiff requested a refill of his medication at the BKDC clinic. (Pl.'s Opp'n at 9.) Plaintiff explained to Defendant Dr. Lesly Jean Gilles ("Dr. Gilles") his issues with chronic muscle and joint pain, and the dosage of the pain medications he needed. (Id.) Rather than restore the Robaxin prescription to the dosage Plaintiff requested (four pills per day), Dr. Gilles renewed it at the same level last prescribed by Dr. Alam (two pills per day). (Id.) Dr. Gilles also reduced Plaintiff's Naproxen prescription to half the prior dosage. (Id.)

On April 3, Plaintiff went to the clinic to renew his medication and to request that the dosage of his pain medications be increased to the original levels. (Id. at 10.) Plaintiff explained that his pain medications had run out before the renewal date because he took the medication as

needed, rather than as prescribed. (Id.) In other words, even though at the time he was only prescribed two Robaxin pills per day, Plaintiff continued to take four pills per day in order to control his pain. (Id.) Defendant P.A. Arlie Massillon ("P.A. Massillon") advised Plaintiff that she would not increase the dosage of the pain medications because of side effects associated with prolonged use. (Id. at 20.) P.A. Massillon also noted that Plaintiff exhibited signs of drug seeking behavior for Robaxin and Naproxen. (Medical Records at 345; see also Pl.'s Opp'n at 6.) Plaintiff and P.A. Massillon engaged in a verbal confrontation over P.A. Massillon's assessments. (Pl.'s Opp'n at 10.) P.A. Massillon refilled the medication at the existing dosage, and referred Plaintiff to consultation with an orthopedic specialist. (Medical Records at 345.) Plaintiff subsequently filed a grievance against P.A. Massillon and other unnamed medical personnel at BKDC complaining that they refused to increase the dosage of his pain medications. (Pl.'s Opp'n at 10, 20-21; Compl. at 17.)

On April 9, Plaintiff discussed his pain medications with Defendant Dr. Aman Bakshi ("Dr. Bakshi"). (Pl.'s Opp'n at 10.) Dr. Bakshi assured Plaintiff that his prescriptions would be restored to the original levels, but did not actually increase Plaintiff's dosage. (Id.; Compl. at 23.) Plaintiff alleges that Dr. Bakshi made similar false assurances to him about increasing his medications at other times. (Compl. at 23.) On this occasion, when Plaintiff learned that day that his prescriptions were not changed back to the higher dosage, Plaintiff returned to the clinic to complain. (Pl.'s Opp'n at 10.) Dr. Gilles heard Plaintiff's grievance, but refused to change the prescription. (Id.) Plaintiff returned to the clinic on April 10. (Id.) He was seen by Dr. Bakshi, who again declined to restore the dosage to that requested by Plaintiff. (Id.)

On April 13, Plaintiff met with Defendant Dr. Khin Kyu ("Dr. Kyu") to discuss the formal complaint he lodged against P.A. Massillon. (Id.) Plaintiff explained to Dr. Kyu the

issues regarding his pain medications, that they had been reduced from their original dosage by various doctors and physician's assistants, and that the lowered prescription were insufficient to control his pain. (Id.) Dr. Kyu promised Plaintiff that "everything was going to be OK" and that Plaintiff would receive proper medication moving forward. (Id.) However, the pain medications were never restored to the original prescription. (Id. at 11.)

Plaintiff returned to the BKDC clinic on April 18, 2012, for a scheduled X-ray examination relating to his muscle and joint problems. (Id.) However, Plaintiff refused the examination because it was to be performed by Dr. Bakshi. (Id.) Instead, he requested a referral to a specialist. (Id.) Plaintiff notes that he had been asking to be treated by a specialist since January 2012, but medical personnel had always denied his requests, with some claiming there were no specialists for Plaintiff's condition. (Id. at 11-12; see also Compl. at 7, 11.) Plaintiff was examined by an orthopedic specialist on April 23, 2012. (Pl.'s Opp'n at 11.) The orthopedist noted that Plaintiff's X-rays revealed some arthritis. (Id. at 8.) After the appointment, the specialist recommended physical therapy and referred Plaintiff to a rheumatologist. (Id. at 11.) Plaintiff began physical therapy on May 7. (Id. at 11.)

On April 26, Plaintiff sought to renew his pain medications with Dr. Gilles. (Id. at 8.) Dr. Gilles warned Plaintiff about the side effects of being on these pain medications for an extended period of time. (Compl. at 21.) Plaintiff explained to Dr. Gilles that he did not care about potential side effects because he was in such pain that he could not sleep through the night. (Id.) After signing a waiver disclaiming any responsibility for the clinic relating to the medication side effects, Dr. Gilles renewed Plaintiff's prescription at the existing level, i.e., the dosage that was half the original December 2011, prescription, and which Plaintiff had been complaining about for the past several months. (Id.) At the same appointment, Plaintiff also

asked Dr. Gilles why the orthopedic specialist was able to identify arthritis in Plaintiff's X-rays, but the medical personnel at Rikers Island or BKDC could not. (Pl.'s Opp'n at 8.) Dr. Gilles responded that there are times when specialists can recognize problems that non-specialists cannot. (Id.)

Plaintiff's issues with his medication continued when he requested a renewal from Dr. Gilles on May 14, 2012. (Id. at 13.) Plaintiff told Dr. Gilles that the physical therapy sessions had been going well, but that he wished to continue with the pain medications until he felt better. (Id.) Dr. Gilles assured Plaintiff that his pain medications would be renewed, but did not change the prescription and Plaintiff continued to receive dosages that were half of what he wanted. (Id.) As a result, Plaintiff filed a second grievance against the medical staff at BKDC. (Id.)

Plaintiff returned to the clinic two days later to discuss his pain medication. (Id.) Dr. Bakshi denied Plaintiff's request for an increased dosage. (Id.) In addition, Dr. Bakshi reduced the cycle of Plaintiff's prescription from the usual five or seven days to three days, i.e., Plaintiff's prescription would only last three days. (Id.) Plaintiff also complains that in addition to issues with the reduced dosage of his pain medication, he consistently received fewer pills than he was prescribed, thus further lowering the amount of pain medication available to him. (Id. at 13-14.)

On June 6, Plaintiff arrived at the clinic after an appointment at Bellevue Hospital relating to a hand injury. (Id. at 14; Compl. at 19.) During this visit, Defendant Dr. Iosif Shpits ("Dr. Shpits") renewed certain of Plaintiff's non-pain medications without Plaintiff's consent, drugs that Plaintiff states he no longer needed. (Pl.'s Opp'n at 14-15; Compl. at 19.) Plaintiff claims his medication had never been renewed without his consent, and that this automatic renewal was contrary to standard medical practice. (Compl. at 19.) Dr. Shpits also discussed

with Plaintiff his second grievance, which was filed after his May 14 appointment with Dr. Gilles. (Pl.'s Opp'n at 14; Compl. at 19.) Dr. Shpits told Plaintiff that he had investigated the issue, and he concluded that there was a delay in the distribution of Plaintiff's medication by the pharmacy, caused in part by Plaintiff's failure to pick up his medication on time. (Pl.'s Opp'n at 7, 14-15.) Plaintiff disputes the results of Dr. Shpits's investigation because he never had to pick up his medications, which were always delivered to him. (Id. at 15.) To avoid future problems and misunderstanding with the pharmacy, Dr. Shpits placed Plaintiff's medications on the "DOT" list. (Id. at 15-16.) Drugs on the DOT list must be administered under supervision of the medical staff, and refusal to take the drugs may result in penalties. (Id.; Compl. at 19-20.) However, at the time, Plaintiff alleges that the medications placed on the DOT list were unrelated to the pain medications that formed the basis of his complaint. (Pl.'s Opp'n at 15.)

Because Plaintiff opposed having his medications placed on DOT list, he refused to take them in protest. (Id. at 17.) As a result, he was served with a summons for disobeying a direct order. (Id.) His repeated refusals to take his medications eventually resulted in a punishment of solitary confinement for thirty days. (Id.) Plaintiff claims that Dr. Shpits and the medical staff at the BKDC clinic intentionally placed Plaintiff's medications on DOT status so that Plaintiff would be found in violation and be punished for it. (Id.; Compl. at 20.)

Plaintiff does not allege any further problems with his pain medications after June 2012. His physical therapy sessions, which began in May 2012, were discontinued after fifteen sessions in November 2012. (Pl.'s Opp'n at 6-7.) Plaintiff states that the physical therapist told him that the sessions were discontinued because the therapist "was not getting enough working hours." (Id.)

8

Plaintiff was subsequently examined on July 2, 2013, and the examination revealed that his arthritis had spread to his left hip. (Id. at 9.) The non-party doctor that examined him advised that a hip replacement may be necessary. (Id.) The doctor prescribed an anti-inflammatory drug and additional physical therapy. (Id.) Plaintiff claims that Individual Defendants' repeated denials of his request for a higher dosage of his pain medications and their failure to refer him to a specialist until April 2012, caused his arthritis and muscle and joint problems to deteriorate to this point. (Id. at 18.) He can no longer participate in many ordinary activities such as running, playing sports, sitting or standing for a long time. (Id.) Plaintiff asserts that the reason why Individual Defendants cut his medications and delayed providing physical therapy is because they wanted to save money for the City. (Compl. at 23; Pl.'s Opp'n at 19.)

### B.    Procedural History

Plaintiff filed his Complaint against Defendants on January 4, 2013, in the United States District Court for the Southern District of New York, and the case was assigned to Judge Andrew L. Carter, Jr. (See Compl.) In an order dated May 2, 2013, Judge Carter transferred the action to the Eastern District of New York as the more appropriate venue because Plaintiff's constitutional rights were allegedly violated within the Eastern District. (Order (Dkt. 28) (noting that Rikers Island is in both the Eastern District and the Southern District, and Brooklyn Detention Complex is in the Eastern District).)

On November 15, 2013, Defendants filed their fully briefed motion to dismiss. (See Defs.' Mot.; Pl.'s Opp'n; Defs.' Reply (Dkt. 45).) By order dated November 18, 2013, the court accepted the filing under seal of Defendants' Declaration in Support of Defendants' Motion to Dismiss and its accompanying exhibits, which included Plaintiff's Medical Records. (Order

(Dkt. 47).) On December 19, 2013, Plaintiff appealed the court's November 18, 2013, Order to the Second Circuit. (Not. of Interlocutory Appeal (Dkt. 49).) The Second Circuit dismissed the appeal on July 22, 2015. Order, <u>Mena v. Shpits et al.</u>, No. 13-4870 (2d Cir. July 22, 2015) (Dkt. 29). The mandate issued on August 14, 2015, returning jurisdiction to this court. (<u>See</u> Mandate (Dkt. 54).)

## II.   LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's claims for relief. <u>Patane v. Clark</u>, 508 F.3d 106, 112 (2d Cir. 2007). In reviewing a complaint, the court accepts as true all allegations of fact and draws all reasonable inferences from these allegations in favor of the plaintiff. <u>See</u> <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007). "[A] <u>pro se</u> complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted). While "the submissions of a <u>pro se</u> litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest," <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 474 (2d Cir. 2006) (citation and internal quotation marks omitted), even a <u>pro se</u> complaint will be dismissed if it does not contain "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face,'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). Plausibility "is not akin to a probability requirement," but requires "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> "[M]ere 'labels and conclusions' or

10

'formulaic recitation[s] of the elements of a cause of action will not do'; rather, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 555).

## III.   DISCUSSION

Plaintiff brings this action against eight individual medical providers, the City of New York, and the City's medical services provider Corizon, pursuant to 42 U.S.C. § 1983, for claims of deliberate indifference to medical needs in violation of the Due Process Clause of the Fourteenth Amendment.[4]  Plaintiff argues that Defendants violated his constitutional rights by reducing the dosage of his pain medications, providing him with less than the prescribed amount of the pain medications, delaying his referral to an orthopedic specialist, and stopping his physical therapy after fifteen sessions. The court also construes the Complaint to assert state law negligence and medical malpractice claims on the same facts.

### A.   Deliberate Indifference to Medical Needs

The Due Process Clause of the Fourteenth Amendment proscribes the mistreatment of pretrial detainees by prison officials. Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009). A prison official who is deliberately indifferent to a detainee's serious medical needs violates this proscription. Id. at 72.  To state a viable claim, a plaintiff must allege that (1) objectively, the

---

[4] A deliberate indifference claim by a convicted prisoner sounds in the Eighth Amendment's prohibition of "cruel and unusual punishment." Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009). However, the Eighth Amendment is inapplicable to pretrial detainees because, prior to conviction, a detainee is not being punished. Id. Instead, pretrial detainees are protected by the Due Process Clause of the Fifth Amendment if held in federal custody, or by the Due Process Clause of the Fourteenth Amendment if held by the state. Id. Analytically, this is a distinction without a difference as the legal standard for a deliberate indifference claim is the same whether it is asserted under the Fifth, Eighth, or Fourteenth Amendments. Id. at 70-71. Here, it is unclear on the face of the Complaint whether Plaintiff was in the custody of the City of New York as a pretrial detainee or a convicted prisoner. (See generally Compl.) Defendants' moving papers indicate that Plaintiff was a pretrial detainee, and thus frames Plaintiff's claims as one pursuant to the Fourteenth Amendment. (See Defs.' Mot. at 14 n.15.) The court assumes for the purposes of this motion that Plaintiff was a pretrial detainee, but notes that it has no bearing on the court's analyses.

11

deprivation of adequate medical care was sufficiently serious; and (2) subjectively, the defendant was deliberately indifferent to plaintiff's health. Salahuddin v. Goord, 467 F.3d 263, 279-81 (2d Cir. 2006). It has been noted repeatedly that "not every lapse in medical care is a constitutional wrong." Id. at 279. Courts recognize that "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

Under the objective prong, a plaintiff must show that there was an "objectively serious deprivation." Salahuddin, 467 F.3d at 279. "Only deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of a [constitutional] violation." Id. (internal quotation marks omitted) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991), and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). An "objectively serious deprivation" occurred only if the prisoner was "actually deprived of adequate medical care," and "the inadequacy in medical care [wa]s sufficiently serious." Id. at 279-80. Where the inadequacy complained of is "an unreasonable delay or interruption in . . . treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" Id. at 280 (quoting Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003)).

Under the subjective prong, a plaintiff must allege that the charged official acted with a "sufficiently culpable state of mind." Id. The required state of mind is "subjective recklessness, as the term is used in criminal law." Id. Mere negligence is not enough. Id. To be "sufficiently culpable," the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Hathaway v.

12

Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (quoting Farmer v. Brennan, 511 .S. 825, 837(1994)). The inquiry is a subjective one focused on the charged official's own state of mind, and therefore a defendant may not be culpable even if his or her subjective belief as to the risk to detainee health is objectively unreasonable. Salahuddin, 467 F.3d at 281.

### 1. Pain Medication Prescription

At the heart of this case is the dosage of Plaintiff's pain medications. Most of Plaintiff's factual allegations involve either Individual Defendants' decision to reduce the dosage of the pain medications or their refusal to restore the prescription to the originally prescribed dosage. (See generally Compl.; Pl.'s Opp'n.) Because the disagreement involved how much pain medications Individual Defendants should have prescribed rather than whether they deprived him of medication for his joint and muscle pain, Defendants argue that Plaintiff failed to plead that he was "actually deprived of adequate medical care." (Defs.' Mot. at 15-17). The court agrees.

Prison officials are not deliberately indifferent to medical needs simply because they decide not to prescribe stronger pain medications. See Hill v. Curcione, 657 F.3d 116, 123 (2d Cir. 2011). Courts in this circuit have been quite consistent on this point. See Salvatierra v. Connolly, No. 09-CV-3722 (SHS) (DF), 2010 WL 5480756, at *19 (S.D.N.Y. Sept. 1, 2010) (collecting cases). "While prisoners have a right to medical care, they do not have a right to choose a specific type of treatment." See Veloz v. New York, 339 F. Supp. 2d 505, 525 (S.D.N.Y. 2004). Constitutional rights are not implicated when the claim "amount[s] to a disagreement over the appropriateness of a particular prescription plan." Id. (dismissing claims that defendant should have prescribed plaintiff pain medication stronger than Tylenol). The

13

general rule is that "[i]ssues of medical judgment cannot be the basis of a deliberate indifference claim." Hill, 657 F.3d at 123.

One exception where the rule does not apply is if the prison official's decision is not based on sound medical judgment, but on financial considerations. DeMeo v. Koenigsmann, No. 11-CV-7099 (HBP), 2015 WL 1283660, at *13 (S.D.N.Y. Mar. 20, 2015) (denying motion to dismiss where denial of MRI was allegedly financially motivated); see also Jones v. Westchester Cty. Dep't of Corr. Med. Dep't, 557 F. Supp. 2d 408, 415-16 (S.D.N.Y. 2008) (denying motion to dismiss where delay of hip surgery alleged to have been financially motivated). However, even where such an ulterior motive is pleaded, a plaintiff must still allege that the treatment denied was medically necessary. See Shepherd v. Powers, No. 11-CV-6860 (LTS) (RLE), 2012 WL 4477241, at *6 (S.D.N.Y. Sept. 27, 2012) (finding Plaintiff's claim is not saved by allegation that he was denied treatment because it was "too expensive" because "Plaintiff has not pled any facts in support of his claim that treatment . . . was medically necessary"); see also Colon v. County of Nassau, No. 12-CV-4466 (JS) (SIL), 2014 WL 4904692, at*6 (E.D.N.Y. Sept. 6, 2014). While Plaintiff has alleged that Individual Defendants were motivated to reduce the dosage of his medications to "save money for the City," he has not pleaded any facts tending to show that an increased dosage was medically necessary. (Compl. at 23; see also Pl.'s Opp'n. at 19 ("[T]he City of New York does not want to spend money on very necessary and important things.").) While not dispositive, the court also notes that Plaintiff acknowledged that at least some of the Individual Defendants were concerned about side effects relating to Plaintiff's continued use of the prescribed medications (Compl. at 21; Pl.'s Opp'n at 7, 20), and at least one Defendant concluded Plaintiff exhibited drug seeking behavior regarding his pain medications (Medical Records at 345; Pl.'s Opp'n at 6).

14

Furthermore, Plaintiff concedes that part of the reason why his pain medications were insufficient was because he took his desired dosage regardless of the prescription, and as a result, he depleted his allotted medication before he could renew them. (Compl. at 27.)

Plaintiff's claim thus boils down to a disagreement between what Plaintiff himself believed he should have been prescribed, and what the eight Individual Defendants believed he should have been prescribed. Plaintiff has failed to allege that stronger pain medications were medically necessary, and so he was not "actually deprived of adequate medical care."

### 2. Pain Medication Packaging Problems

Plaintiff also alleges that he consistently received less pain medication than he should have based on his prescriptions. (Pl.'s Opp'n at 4, 13-14.) For example, if Plaintiff's prescription called for two pills per day for a cycle of seven days, then he should have received fourteen pills in total. (Id. at 4.) But in many cases, he would actually receive fewer than fourteen pills. (Id.) Even assuming this is true, Plaintiff has failed to allege a basis to hold these Individual Defendants responsible. "Deliberate indifference requires a showing of personal involvement." Powell v. Corr. Med. Care, Inc., No. 13-CV-6842, 2014 WL 4229980, at *6 (S.D.N.Y. Aug. 15, 2014) (citing Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003)). Plaintiff has not alleged that these Defendants were personally involved. Indeed, Plaintiff concedes that his medication was "always brought to the plaintiff's tier at his housing area by the medication nurse." (Pl.'s Opp'n at 15.) As Individual Defendants are not alleged to have been personally responsible for the supposed errors in the packaging of Plaintiff's medications, these errors cannot be a basis for a claim of deliberate indifference against them.[5]

---

[5] In relation to his medications, Plaintiff also complains that Defendant Dr. Shpits, conspiring with other Individual Defendants, "maliciously" placed him on DOT status, which required that Plaintiff report to the clinic to take his medication under the observation of the medical staff. (Pl.'s Opp'n at 14-17.) Plaintiff explains that the reason given by Dr. Shpits for this change was to address Plaintiff's grievance about receiving incorrect amounts of his pain

### 3. Specialist Referral

Plaintiff has further argued that Individual Defendants were deliberately indifferent to his medical needs because they delayed his referral to an orthopedic specialist for four months. (See, e.g., Compl. at 7, 11; Pl.'s Opp'n at 4-5, 11.) Plaintiff claims that he repeatedly asked Individual Defendants to refer him to a specialist, but they "lied" and told him there were none. (Compl. at 7, 11.) He was finally referred to a specialist on April 3, 2012, and seen by the specialist on April 23, 2012. (See Pl.'s Opp'n at 11.) Similar to the pain medication prescription claim, Defendants argue that Plaintiff was not actually denied adequate medical care because it was a matter of medical judgment whether a referral was necessary. (Defs.' Reply (Dkt. 45) ¶ 14.) The court disagrees.

To satisfy the objective prong of a deliberate indifference claim, Plaintiff must allege that the delayed referral constituted an "actual[] depriv[ation] of adequate medical care," and "the inadequacy . . . [wa]s sufficiently serious." Salahuddin, 467 F.3d at 279-80. As noted previously, detainees are not deprived of adequate medical care unless there is an allegation of medical necessity. Unlike the claim relating to his pain medications, Plaintiff sufficiently alleges that a referral was medically necessary. While not dispositive, the court notes that P.A. Massillon eventually saw fit to refer Plaintiff to the orthopedic specialist in April 2012. (Medical Records at 345.) Plaintiff also alleges that the specialist reviewed his existing X-rays and concluded Plaintiff suffered from arthritis, a finding that allegedly eluded Individual Defendants when they examined the same X-rays. (Id.) Plaintiff further claims that Defendant Dr. Gilles

---

medications. (Id.) Whatever the reason, this is not a basis for a deliberate indifference claim. Plaintiff does not allege that Dr. Shpits deprived him of adequate medical care. In fact, it appears Dr. Shpits wanted to make sure Plaintiff was taking and receiving the correct amount of his medications. The fact that Plaintiff subsequently refused to take his medication under supervision of the staff in protest for being placed on DOT status, and, as a result, was punished for violating prison rules, in no way alters the legal calculus.

explained that a specialist may notice issues that non-specialists would miss. (Id.) Defendants argue that nothing in Plaintiff's Medical Records indicate an orthopedic consultation was necessary before April 2012 (Defs.' Reply ¶ 14), but the court is satisfied that Plaintiff has alleged enough facts to survive a motion to dismiss.

The court also finds that Plaintiff has alleged that "the inadequacy in medical care is sufficiently serious." Because the inadequacy complained of is a delay in referral, the court focuses on the seriousness of the delay on Plaintiff's health. Id. at 280. Here, Plaintiff alleges that the delay contributed to the deterioration of his chronic joint and muscle problems, and, as a result, his arthritis spread to his left hip to the point where a doctor has suggested that he consider hip replacement surgery. (Pl.'s Opp'n at 9, 18.) Courts have found similar degenerative joint and muscle issues and arthritic hip problems to be objectively serious. See, e.g., Bown v. DeFrank, No. 06-CV-2235 (AJP), 2006 WL 3313821, at *22 (S.D.N.Y. Nov. 15, 2006) (arthritic hip); Rhames v. Fed. Bureau of Prisons, No. 00-CV-4338, 2002 WL 1268005, at *6 (S.D.N.Y. June 6, 2002) (arthritic hip); Woods v. Goord, 01-CV-3255, 2002 WL 731691, at *4 (S.D.N.Y. Apr. 23, 2002) (degenerative joint disease, and rheumatoid arthritis); see also Hathaway v. Coughlin, 37 F.3d 63, 67 (2d Cir. 1994) (degenerative hip condition). Because Plaintiff has alleged facts sufficient to show that he was "actually deprived of adequate medical care" and "the inadequacy in medical care [wa]s sufficiently serious," the objective prong of Plaintiff's deliberate indifference claim is met.

Under the subjective prong, Plaintiff must allege that Defendants acted with a "sufficiently culpable state of mind, [i.e.,] subjective recklessness." Salahuddin, 467 F.3d at 280. Individual Defendants must know of and disregard an excessive risk to Plaintiff's health, and both be aware of facts from which they can infer a substantial risk of serious harm exists and

draw that inference. Hathaway, 99 F.3d at 553. "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to [a constitutional] violation." Chance, 143 F.3d at 703. Where the alleged decision to delay or deny treatment is based on sound medical judgment, there is a presumption the charged official was not subjectively reckless. See DeMeo, 2015 WL 1283660, at *13; Patterson v. Westchester County, No. 13-CV-194 (PAC) (AJP), 2014 WL 1407709, at *9 (S.D.N.Y. Apr. 11, 2014), adopted by 2014 WL 2759072 (S.D.N.Y. June 16, 2014). The presumption does not hold, however, when the decision was financially motivated. DeMeo, 2015 WL 1283660, at *13; see also Powell, 2014 WL 4229980, at *4. "This allegation of ulterior motives, if proven true, would show that the defendants had a culpable state of mind and that their choice of treatment was intentionally wrong and did not derive from sound medical judgment." Chance, 143 F.3d at 704.

Plaintiff has alleged the decision to delay referral to a specialist was based on budgetary, rather than medical, considerations. (Compl. at 23; Pl.'s Opp'n. at 19.) Reading the pro se Complaint liberally and accepting all factual allegations as true for the purpose of the present motion to dismiss, the court concludes that it is plausible that each Individual Defendant declined to refer Plaintiff for an orthopedic consultation over a period of four months pursuant to a policy of the City and/or Corizon to delay treatment to save money. (Pl.'s Opp'n at 19.) "It may become clear, at summary judgment or at some later stage in the litigation, that these claims are not adequately supported." Chance, 143 F.3d at 703. Nevertheless, it is premature at this phase to decide whether Individual Defendants' medical decisions were financially motivated. See Jones, 557 F. Supp. 2d at 416-17. The alleged delay of referral met both the objective and

subjective prongs of the deliberate indifference standard, and therefore survives Defendants' motion to dismiss.

### 4. Physical Therapy

Finally, Plaintiff complains that his physical therapy was discontinued after fifteen sessions. (Pl.'s Opp'n at 7, 18.) The non-party physical therapist allegedly stopped the treatment because he did "not hav[e] enough working hours." (Id. at 7.) Plaintiff's deliberate indifference claim based on this alleged deprivation is deficient for two previously discussed reasons. First, Plaintiff has failed to allege that further physical therapy sessions were medically necessary. See Colon, 2014 WL 4904692, at*6. There is no indication that either the physical therapists or the orthopedic specialist that referred Plaintiff to physical therapy believed he needed more than the fifteen sessions. Second, none of the Individual Defendants are alleged to have been personally involved in the decision to discontinue physical therapy. Absent personal involvement, Plaintiff's claim of deliberate indifference fails. See Powell, 2014 WL 4229980, at *6. Accordingly, Plaintiff's allegations relating to physical therapy fails to state a claim on two independent grounds.

### B. Claims Against Dr. Aman Bakshi

Dr. Aman Bakshi, a former Corizon employee who worked at the BKDC operated by the City, has not appeared in this case, and counsel for the remaining Defendants state upon information and belief that he has not yet been served. (See Defs.' Mot. at 1 n.2; see also Defs.' Ltr. (Dkt. 28).) A review of the docket indicates that Plaintiff served Dr. Bakshi by mail at his last known work address. (Bakshi Proof of Service (Dkt. 10).) Service by mail on a defendant's last known work address, however, is not an acceptable method of service. See Fed. R. Civ. P. 4(e) (allowing for service in person or to an authorized agent, by leaving a copy of the summons

19

at the individual's residence, or any other method permitted by the state where the district court

sits); N.Y. C.P.L.R. § 308 (permitting service in person or to an authorized agent, delivery to a

person of suitable age and discretion at the individual's actual place of business or residence and

then mailing summons to the last known residence or actual place of business). However,

"[d]istrict courts have a responsibility to assist pro se plaintiffs in their efforts to serve process on

defendants." Murray v. Pataki, 378 F. App'x 50, 52 (2d Cir. 2010) (summary order) (quoting

Valentin v. Dinkins, 121 F.3d 72, 75-76 (2d Cir. 1997) (district court are obligated to allow pro

se plaintiff limited discovery to identify defendants for service of process)). Accordingly, the

court directs Defendants Corizon and the City to notify Plaintiff and the court within fourteen

(14) days of entry of this Memorandum and Order whether it possesses the current or last known

residence, or the actual business address for Dr. Bakshi. Although Plaintiff has failed to properly

serve Dr. Bakshi within the 120 days required by Federal Rule of Civil Procedure 4(m), courts

have the discretion to extend the time to serve even without good cause shown. Id.

at 51-52. If sufficient information can be located, Plaintiff is granted leave to attempt service on

Dr. Bakshi within thirty (30) days of receipt of such information.

### C.     Claims Against the City of New York and Corizon

A municipality cannot be held liable pursuant to 42 U.S.C. § 1983 under a theory of

respondeat superior. Monell v. Dep't of Social Servs. of N.Y., 436 U.S. 658, 692 (1978).

However, under Monell, a municipality may be held liable if its employee violated a detainee's

constitutional rights, and such violations resulted from the municipality's official policy. Id. at

693. Such a policy may be:

> (1) a formal policy which is officially endorsed by the municipality; (2)
> actions taken or decisions made by government officials responsible for
> establishing municipal policies which caused the alleged violation of the
> plaintiff's civil rights; (3) a practice so persistent and widespread that it

20

> constitutes a "custom or usage" and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it "amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact."

Jones, 557 F. Supp. 2d at 417.

As an initial matter, the only constitutional violation that Plaintiff has adequately pleaded is a deliberate indifference claim premised on the theory that Individual Defendants refused to refer Plaintiff to an orthopedic specialist for financial, not medical, reasons. (See supra Part III.A.) Accordingly, the City of New York and Corizon[6] can only be liable on this claim and not any other dismissed theory of harm. The question, then, is whether Plaintiff sufficiently pleaded that his delayed referral resulted from an official policy. Construing pro se Plaintiff's albeit scant allegations liberally—as it must, the court finds that Plaintiff's claims against the City and Corizon survives.

Plaintiff specifically alleges that Individual Defendants' decision not to permit a specialist referral was financially motivated, i.e, "the City of New York does not want to spend money on very necessary and important things." (Pl.'s Opp'n at 19.) It may be the case that Plaintiff will not be able to adduce evidence to prove his claim at trial, or even withstand summary judgment. However, if Plaintiff succeeds on his underlying claim against the eight Individual Defendants, which requires him to show that each of their decisions were motivated by monetary concerns, then it seems likely that there would also be evidence of a formal policy or informal custom dictating such actions. See Jones, 557 F. Supp. 2d at 417 (denying motion to dismiss because "Plaintiff has not yet had an opportunity to take the discovery that will be

---

[6] Although Corizon is a private entity, it is the "functional equivalent" of the City of New York because by "providing medical care in prisons, Corizon performs a role traditionally within the exclusive prerogative of the state." Olmedo v. Corizon P.C., No. 14-CV-3853 (AT) (HBP), 2015 WL 4002306, at *4 (S.D.N.Y. June 22, 2015) (internal quotation marks and citation omitted). Corizon thus "enjoys the benefit of Monell." Id.

21

needed to flesh out any Monell claim"). The court therefore finds that it would be premature at this stage to dismiss the City and Corizon.

**D.    State Law Claims**

Finally, Defendants argue that the court should decline to exercise supplemental jurisdiction over Plaintiff's negligence and medical malpractice claims under New York State law if all federal claims are dismissed. (Defs.' Mot. at 25.) Because the court concluded that Plaintiff has stated a deliberate indifference claim based on the allegedly delayed specialist referral, Defendant's motion to dismiss the state law claims on jurisdictional grounds is denied. See Colon v. County of Nassau, No. 12-CV-4466 (JS) (SIL), 2014 WL 4904692, at *12 (E.D.N.Y. Sept. 6, 2014). Defendants have not moved to dismiss Plaintiff's potential state law claims on the merits, and the court will not reach them sua sponte. See id. at *12 n.6.

**IV.    CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss is GRANTED in part, and DENIED in part. Only Plaintiff's claim that he was improperly denied a referral to a specialist to treat his illness for financial reasons survives. Defendants the City and Corizon are DIRECTED to notify Plaintiff and the court within fourteen (14) days whether they are in possession of Defendant Dr. Bakshi's current or last known residence, or actual business address. All Defendants are hereby DIRECTED to answer the Complaint within fourteen (14) days of entry of this Memorandum and Order. Defendants are also DIRECTED to contact Magistrate Judge Bloom to schedule a status conference.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
        March 31, 2016

NICHOLAS G. GARAUFIS
United States District Judge