UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JONATHAN MENA,

                Plaintiff,

      -against-

THE CITY OF NEW YORK; DR. IOSIF SHPITS;
DR. LESLEY JEAN GILLES; DR. AMAN BAKSHI;
DR. KHIN KYU; ARLIE MASSILLON, P.A.; S.
ALAM; TOLULOPE OJUDUN, P.A.; CORIZON;
and JEANTY FRANCOIS, P.A.,

                Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**13-CV-2792 (NGG) (SJB)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Jonathan Mena, proceeding pro se, brought this action against eight individual

medical professionals (the "Individual Defendants") who treated Plaintiff while he was

incarcerated at the Rikers Island Correctional Facility ("Rikers Island") and the Brooklyn

Detention Complex (the "BKDC"); the City of New York (the "City"); and Corizon, the City's

contractor for medical services at Rikers Island (collectively, "Defendants"). (Compl. (Dkt. 1).)

In his complaint, Plaintiff asserted claims pursuant to 42 U.S.C. § 1983 for deliberate

indifference to medical needs in connection with the Individual Defendants' decision to reduce

his pain medications and not to refer him to a specialist, as well as claims of negligence and

medical malpractice under New York law. (See id.) This court granted Defendants' motion to

dismiss as to all of Plaintiff's claims with the exception of Plaintiff's claim that he was

improperly denied a referral to a specialist to treat his illness. (Mem. & Order ("M&O")

(Dkt. 55) at 22.) Now before the court is Defendants' motion for summary judgment (the

"Motion"), seeking dismissal of Plaintiff's sole remaining claim. (See Defs. Mot. for Summ. J.

1

("Defs. Mot.") (Dkt. 92).) For the reasons set forth below, Defendants' motion for summary judgment is GRANTED.

## I. BACKGROUND

### A. Facts

The court repeats the facts of this case as necessary for the purposes of deciding the Motion.

On December 9, 2011, Plaintiff, then incarcerated at Rikers Island, arrived at the on-site medical clinic seeking treatment for joint pain. (See Defs. Rule 56.1 Statement ("Defs. 56.1") (Dkt. 96) ¶ 8.) Plaintiff received a prescription for Naprosyn, a nonsteroidal anti-inflammatory drug. (Id.) Three days later, Plaintiff returned to the clinic complaining of generalized joint and back pain. (Id.) Because Plaintiff stated that the Naprosyn was not working, he was additionally prescribed Robaxin, a muscle relaxant. (Id.)

On January 6, 2012, Plaintiff was examined by a physician's assistant, Defendant P.A. Tolulope Ojudun, who renewed Plaintiff's prescriptions. (Id. ¶ 9.) Three days later, Plaintiff returned to Ojudun, who increased the dosage in Plaintiff's Robaxin prescription after Plaintiff said he had been using it to help the pain subside. (Id.) Plaintiff presented to the medical clinic eight days later, where he requested and received a renewal of his medication. (Id.)

On January 24, 2012, Plaintiff presented to Defendant P.A. Francois Jeanty,[1] and requested a renewal of his medications "for back pain." (Id. ¶ 10.) Jeanty renewed Plaintiff's prescriptions and ordered x-rays of Plaintiff's lumbar, thoracic, and cervical spine. (Id.) While all three x-rays yielded a normal result, a repeat cervical x-ray was performed after the cervical

---

[1] Although this defendant's name is listed on the public docket as "Jeanty Francois," Defendants' Rule 56.1 statement lists his name as "Francois Jeanty." Accordingly, the court refers to him as Francois Jeanty.

x-ray report indicated that certain images were not well captured. (Id.) The repeat x-ray, taken on February 1, 2012, showed that Plaintiff had degenerative disc disease. (Id.)

Over the course of February, Plaintiff thrice requested and received a renewal of his prescriptions. (Id. ¶¶ 11-12.) During his appointment with Defendant Dr. Shah Alam, Alam performed a physical examination on Plaintiff. (Id. ¶ 12.) Alam noted "mild paraspinal tenderness" but that all other findings were within normal limits. (Id.) The same thing occurred twice more in March: Plaintiff presented complaining of pain; a doctor examined him, finding some tenderness; and the doctor renewed Plaintiff's prescriptions. (Id. ¶¶ 13-14.)

On March 23, 2012, Plaintiff was transferred from Rikers Island to the BKDC. (Id. ¶ 15.) On March 27, 2012, Plaintiff presented to Defendant Dr. Lesley Jean-Gilles ("Gilles") complaining of lumbosacral back pain, shoulder pain, and knee pain. (Id.) Gilles examined Plaintiff, noted that Plaintiff was in mild distress, and found mild tenderness in the lumbar region of Plaintiff's back. (Id.) After educating Plaintiff about the potential side-effects of Naprosyn and Robaxin, Gilles gave Plaintiff immediate doses of these medications and renewed Plaintiff's prescriptions. (Id.)

On April 3, 2012, Plaintiff presented to Defendant P.A. Arlie Massillon to renew his medications. (Id. ¶ 16.) Plaintiff also reported a four-month history of "backache." (Id.) He told Massillon that Naprosyn and Robaxin were "helpful." (Id.) Massillon examined Plaintiff and concluded that Plaintiff had a "mild strain of the lumbar region and drug dependence (medication-seeking behavior for Robaxin/Naprosyn)." (Id.) Massillon told Plaintiff that he would have his medication ordered for a five-day period, at which point Plaintiff exhibited hostile behavior and told Massillon that he was going to "write [him] up." (Id.) Massillon

renewed the prescriptions at the existing dosage and referred Plaintiff for a consultation with an orthopedic specialist.[2] (Id.)

On April 9, Plaintiff was examined by Defendant Dr. Aman Bakshi, who documented that Plaintiff complained of "joint aches every now and then." (Id. ¶ 18.) He found that Plaintiff was in no apparent distress and renewed the prescriptions. (Id.) Plaintiff presented to Defendant Dr. Khin Kyu four days later complaining of neck and shoulder pain, which he said he had been experiencing "off and on for about 5 months." (Id. ¶ 19.) Kyu examined Plaintiff and diagnosed him with arthralgias and lower back pain. (Id.) Kyu also referred Plaintiff for a neurology consultation and ordered x-rays of Plaintiff's shoulders, which came back normal. (Id.)

On April 23, 2012, Plaintiff presented to non-party orthopedic surgeon Dr. Lester Lieberman for a consultation. (Id. ¶ 20.) Lieberman performed a physical examination and diagnosed Plaintiff with "musculoskeletal anomalies." (Id.) He prescribed physical therapy and referred Plaintiff to a rheumatologist at Bellevue Hospital Center. (Id.) Plaintiff saw non-party rheumatologist Dr. Pamela Rosenthal on July 11, 2012. (Id. ¶ 21.) She diagnosed Plaintiff with musculoskeletal pain and stiffness syndrome stemming from long cold exposure in November 2011. (Id.) She recommended that Plaintiff continue with his rehabilitation, obtaining repeat x-rays and labs, and using Tylenol as needed. (Id.) Plaintiff underwent physical therapy from May to November 2012. (Id. ¶ 22.) Plaintiff returned to Lieberman on October 15, 2012, and reported that his pain was "somewhat better" with physical therapy. (Id. ¶ 24.) Lieberman's examination of Plaintiff's back was normal and he recommend a follow-up appointment in six

---

[2] At his deposition, as to whether he had a claim against the medical providers at the BKDC related to the failure to refer him to a specialist due to financial concerns, Plaintiff stated, "I can't say I do." (Defs. 56.1 ¶ 17.) He later changed this answer to "I can't say I don't" in the errata sheet of his deposition transcript. (Id.) He also said, in response to whether he had a claim that the defendants at the BKDC should have referred him for an orthopedic consultation, that he did not; he later changed this answer from "No" to "Yes" in the errata sheet of his deposition transcript. (Id.) Plaintiff also testified that his referral was "done fast in Brooklyn," but "[n]ot at Rikers." (Id.)

4

months. (Id.) On November 12, 2012, Plaintiff's physical therapist, non-party Jonathan August, noted that Plaintiff had "plateaued" and that he could continue therapy on his own. (Id. ¶ 25.) Plaintiff testified during his deposition that August told him that Plaintiff's physical therapy was terminated because there were new inmates coming in and August was not being given enough work hours to "keep all of [them] there." (Id. ¶ 28.)

On May 2, 2012, Plaintiff was examined for a hand injury by Defendant Dr. Iosif Shpits. (Id. ¶ 23.) Shpits recommended that Plaintiff see a hand surgeon for a radial nerve lesion and referred Plaintiff to a dentist for a toothache. (Id.)

On February 1, 2013, Plaintiff was seen for an annual physical by Jeanty. (Id. ¶ 26.) Jeanty noted that Plaintiff did "not formulate any acute medical complaints." (Id.) He also noted that Plaintiff appeared to be well and in "no acute distress." (Id.) On June 21, 2013, Plaintiff presented to the medical clinic and complained of hip pain. (Id. ¶ 27.) An x-ray of his left hip revealed mild osteoarthritis for which no action was required at that time. (Id.) Plaintiff was prescribed another nonsteroidal anti-inflammatory drug, Voltaren. (Id.)

### B.    Procedural History

On March 31, 2016, this court granted in part and denied in part Defendants' motion to dismiss Plaintiff's complaint. (See M&O.) "Only Plaintiff's claim that he was improperly denied a referral to a specialist to treat his illness for financial reasons survive[d]." (Id. at 22.)

All Defendants except for Dr. Aman Bakshi answered the complaint within fourteen days of entry of the M&O.[3] (See Answer (Dkts. 57-65).) On November 14, 2016, the court granted

---

[3] In the M&O, the court directed the City and Corizon to notify Plaintiff and the court whether they were in possession of Bakshi's current or last known address. (M&O at 22.) Defendants shared that information with Plaintiff by letter on April 14, 2016 (Defs. Apr. 14, 2016, Letter (Dkt. 66)), but repeated attempts to serve a summons on Bakshi were unsuccessful. (See Suppl. Summons (Dkt. 70).) Plaintiff wrote a letter to Magistrate Judge Bloom explaining that he had been unsuccessful in his attempts to serve process on Bakshi, and asking for further guidance. (Letter (Dkt. 75).) Judge Bloom ordered Plaintiff to serve process on Bakshi by August 15, 2016; and informed him that, if he was unable to do so, his claims against Bakshi would be dismissed under Federal Rule

Defendants leave to move for summary judgment on the remaining claim. (Nov. 14, 2016, Order (Dkt. 80).) On May 3, 2017, Defendants filed their fully briefed motion for summary judgment. (See Defs. Mem. in Supp. of Defs. Mot. ("Defs. Mem.") (Dkt. 95); Pl. Opp'n to Defs. Mot. ("Pl. Opp'n to Summ. J.") (Dkt. 97); Defs. Reply (Dkt. 98).) By order dated January 4, 2017, the court accepted the filing under seal of Plaintiff's medical records, attached as exhibits to Defendant's motion for summary judgment. (Jan. 4, 2017, Order (Dkt. 88).)

On February 2, 2018, the court ordered the parties to submit supplemental briefing as to whether Plaintiff's claims should be analyzed under the Eighth or Fourteenth Amendment to the United States Constitution. (See Order for Suppl. Briefing (Dkt. 101).) Both sides timely responded to the order. (See Defs. Suppl. Br. (Dkt. 103); Pl. Suppl. Br. (Dkt. 104).)

## II. LEGAL STANDARD

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." Figueroa v. Mazza, 825 F.3d 89, 98 (2d Cir. 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The movant may discharge this burden by showing that the nonmoving party has 'fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Lantheus Med. Imaging, Inc. v. Zurich

---

of Civil Procedure 4(m). (July 18, 2016, Order (Dkt. 77).) On July 18, 2016, Judge Bloom issued a Report and Recommendation ("R&R") recommending that the court dismiss Plaintiff's claims against Bakshi pursuant to Rule 4(m). (R&R (Dkt. 78).) No party has objected to the R&R and the time to do so has passed. See Fed. R. Civ. P. 72(b)(2). The court therefore reviews the R&R for clear error. See 28 U.S.C. § 636(b)(1); Wider v. Colvin, 245 F. Supp. 3d 381, 385 (E.D.N.Y. 2017); see also Porter v. Potter, 219 F. App'x 112 (2d Cir. 2007) (summary order). Finding no clear error, the court ADOPTS the R&R.

Am. Ins. Co., 255 F. Supp. 3d 443, 451 (S.D.N.Y. 2015) (alteration in original) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "'The mere existence of a scintilla of evidence' in support of the non-movant will be insufficient to defeat a summary judgment motion." Transflo Terminal Servs., Inc. v. Brooklyn Res. Recovery, Inc., 248 F. Supp. 3d 397, 399 (E.D.N.Y. 2017) (quoting Liberty Lobby, 477 U.S. at 252).

"In determining whether an issue is genuine, '[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion.'" SCW W. LLC v. Westport Ins. Corp., 856 F. Supp. 2d 514, 521 (E.D.N.Y. 2012) (quoting Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995)). "[T]he judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Redd v. N.Y. Div. of Parole, 678 F.3d 166, 173-74 (2d Cir. 2012) (quoting Liberty Lobby, 477 U.S. at 249). However, "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," and "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).

The court must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." McLeod v. Jewish Guild for the Blind, 864 F.3d 154, 156 (2d Cir. 2017) (emphasis added) (citation and quotation marks omitted). Nevertheless, proceeding pro se does not relieve a litigant from the usual requirements of summary judgment. See, e.g., Marks v. Scalabrini, 204 F. Supp. 3d 514, 521 (S.D.N.Y. 2016). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is

not sufficient to overcome a motion for summary judgment." Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (emphasis added) (quoting Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)); see Christian v. Powell, No. 16-CV-673 (KBF), 2017 WL 398406, at *2 (S.D.N.Y. Jan. 30, 2017) ("[A] pro se movant for summary judgment must still provide 'a short and plain statement of the claim showing that the pleader is entitled to relief' and show that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" (first quoting Fed. R. Civ. P. 8(a)(2), and then quoting Fed. R. Civ. P. 56(a))).

## III. DISCUSSION

### A. Deliberate Indifference to Medical Needs

The Due Process Clause of the Fourteenth Amendment forbids the mistreatment of pretrial detainees by prison officials.[4] Kingsley v. Hendrickson, 135 S. Ct. 2466, 2475 (2015); see Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). Claims by pretrial detainees as to the conditions of their confinement are evaluated under the Due Process Clause, rather than the Eighth Amendment's proscription against cruel and unusual punishment, because "pretrial detainees have not been convicted of a crime and thus may not be punished in any manner— neither cruelly and unusually nor otherwise." Darnell, 849 F.3d at 29 (citation and internal quotation marks omitted). Until three years ago, this distinction was immaterial. See Caiozzo v. Koreman, 581 F.3d 63, 70 (2d Cir. 2009) ("[T]he standard for deliberate indifference is the same under the Due Process Clause of the Fourteenth Amendment as it is under the Eighth Amendment."). In Kingsley, however, the Supreme Court "concluded that excessive force

---

[4] Given conflicting statements in Defendants' briefing regarding whether Plaintiff's claims of deliberate indifference should be analyzed under the Eighth or Fourteenth Amendment, the court ordered supplemental briefing on this question. (See Order for Suppl. Briefing.) In their supplemental brief, Defendants clarified that, because the medical care at issue in this case took place in 2012 but Plaintiff was not convicted and sentenced until 2013, Plaintiff's claims should be analyzed under the Fourteenth Amendment. (Defs. Suppl. Br. at ECF p.2.)

claims brought under the Fourteenth Amendment do not require the same subjective intent standard as excessive force claims brought under the Eighth Amendment." Darnell, 849 F.3d at 33. The analytical upshot of this decision is that a pretrial detainee claiming an excessive use of "force"—i.e., "the series of physical events that take place in the world"—is not required to prove the defendant's "state of mind." Kingsley, 135 S. Ct. at 2472-73; see Darnell, 849 F.3d at 33.

Following Kingsley, a pretrial detainee challenging the conditions of his confinement must satisfy two "prongs" to prove a claim: (1) "that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process" (the "objective" prong); and (2) "that the officer acted with at least deliberate indifference to the challenged conditions" (the "mens rea" prong). Darnell, 849 F.3d at 29. "[A] plaintiff seeking to satisfy the mens rea prong must demonstrate that the defendant behaved in an objectively reckless manner." Isaac v. City of New York, No. 17-CV-1021 (PGG), 2018 WL 1322196, at *4 (S.D.N.Y. Mar. 13, 2018); see Darnell, 849 F.3d at 35 ("[T]he 'subjective prong' (or 'mens rea prong') of a deliberate indifference claim is defined objectively."). In order to determine whether Plaintiff's claim meets this requirement, the court must inquire into whether "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." Darnell, 849 F.3d at 35; accord Davis v. McCready, 283 F. Supp. 3d 108, 120 (S.D.N.Y. 2017). As one court has observed, while Darnell "reaffirmed that something more than negligence is [still] needed to elevate a claim of medical misconduct to a constitutional tort . . . , it may not be so easy for a district court to distinguish between 'mere negligence' and 'mens

rea greater than mere negligence' in cases involving medical treatment." <u>Davis</u>, 283 F. Supp. 3d at 121 (internal citation omitted). A claim based on an inmate's disagreement with the defendants' medical judgment as to the proper course of treatment cannot support a constitutional claim for deliberate indifference. <u>Simpson v. Oakes</u>, 640 F. App'x 86, 88 (2d Cir. 2016) (summary order) (citing <u>Chance v. Armstrong</u>, 143 F.3d 698, 703 (2d Cir. 1998)).

The crux of Plaintiff's deliberate-indifference claim is that, over the course of a four-month period, he asked for and was denied referral to an orthopedic specialist. Plaintiff says that the Individual Defendants told him there was "no specialist available to deal with his condition" and that "nothing in the plaintiff's medical records indicated that an orthopedic consultant was necessary before April, 2012." (Pl. Opp'n to Summ. J. at 2-3.) He was finally referred to a specialist on April 3, 2012, and seen by the specialist on April 23, 2012. (<u>See</u> Pl. Opp'n to Mot. to Dismiss (Dkt. 43) at 10-11.) The specialist observed some arthritis in Plaintiff's x-rays, and instructed Plaintiff to begin physical therapy and referred him to a rheumatologist. (Defs. 56.1 ¶ 20.) Plaintiff says that the delay in referring him to the specialist was both objectively and subjectively unreasonable, and that the Individual Defendants and the Municipal Defendants are thus liable under the Fourteenth Amendment for denying him necessary medical treatment.

The court divides its examination of Defendants' motion for summary judgment into three parts: first, as to Individual Defendants Shpits, Kyu, and Massillon; second, as to Individual Defendants Gilles, Ojudun, Jeanty, and Alam; and third, as to the Municipal Defendants. The court finds no disputed issue of material fact and GRANTS Defendants' motion for summary judgment.

1.    The Individual Defendants

    a.    *Shpits, Kyu, and Massilon*

Defendants urge the court to dismiss Plaintiff's claims against Shpits, Kyu, and Massilon because Plaintiff "makes no claim related to a failure [of any of these defendants] to refer him to an orthopedic specialist." (See Defs. Mem. at 5-8.) The court agrees. A plaintiff may not succeed on a § 1983 claim against defendants who were not personally involved in the alleged deprivation of the plaintiff's constitutional rights. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); see Hudson v. Lockhart, 554 F. Supp. 2d 494, 496-97 (S.D.N.Y. 2008) (dismissing a § 1983 claim regarding adequacy of medical treatment because the plaintiff did not "sufficiently alleg[e] any direct personal involvement by [the defendant medical personnel] in the injuries [the plaintiff] assert[ed]"). Even if Plaintiff was objectively and subjectively deprived of care during his incarceration, he has not alleged it was due in part to the actions or omissions of these defendants: Plaintiff's § 1983 claims against Shpits, Kyu, and Massillon all relate to his now-dismissed claims regarding his pain medication. (See Compl. at ECF pp.17-21; Pl. Opp'n to Mot. to Dismiss at ECF pp.6-10.) The only relevance any of these defendants has to Plaintiff's referral to an orthopedic specialist is that Massillon was the one who eventually referred Plaintiff to a specialist on April 3, 2012 (see Defs. 56.1 ¶ 16), something that cannot be used as the basis for a claim that Plaintiff was denied access to a specialist. Because Plaintiff has not made any "assertion[s] of fact" that would support liability for defendants Shpits, Kyu, or Massillon on the claim of deliberate indifference to Plaintiff's medical needs stemming from his inability to secure a referral to an orthopedic specialist, the remaining claims against them must be dismissed. See Fed. R. Civ. P. 56(e).

b.      *Gilles, Ojudun, Jeanty, and Alam*

In contrast to Plaintiff's claims against Shpits, Kyu, and Massillon, his claims against

Gilles, Ojudun, Jeanty, and Alam do allege deliberate indifference stemming from the delay in

referring Plaintiff to an orthopedic specialist. Gilles treated Plaintiff shortly before his referral to

a specialist, and told Plaintiff following the referral that a specialist would be able to notice

issues that a non-specialist would miss. (Pl. Opp'n to Mot. to Dismiss at ECF p.8.) Ojudun,

Jeanty, and Alam treated Plaintiff throughout January and February 2012, during the period in

which Plaintiff claims that he requested referral to a specialist. (See id. at ECF pp.2-3.)

Although the claims that Plaintiff asserts against these defendants by name involve Plaintiff's

medication—claims which have been previously dismissed by the court—given the timeline of

Plaintiff's treatment, the court construes Plaintiff's allegations that he was denied a referral

starting in January 2012 as meaning to implicate one or more of these defendants. The court

must therefore analyze whether Plaintiff's allegations against these defendants satisfy the

objective and mens rea prongs of his deliberate indifference claim, based on the pleading

requirements appropriate at this stage in the proceedings.

i.      Objective Prong

Under the objective prong of a deliberate-indifference claim, a plaintiff must show that

there was an "objectively serious deprivation" of medical care. Salahuddin, 467 F.3d at 279.

Courts determine whether a deprivation of care is actionable based on a two-part test: First, the

court must determine whether the inmate was "actually deprived of adequate medical care." Id.

at 279. Second, the court asks whether the deprivation of medical care was "sufficiently

serious." Id. at 280. "Factors relevant to the seriousness of a medical condition include whether

a reasonable doctor or patient would find it important and worthy of comment, whether the

condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." Id. (internal quotation marks and alterations omitted). When the complained-of inadequacy is a delay in treatment, "the seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." Id. (internal quotation marks and alterations omitted).

At the motion-to-dismiss stage, this court was satisfied that Plaintiff had sufficiently alleged that "a referral was medically necessary" and that "the inadequacy in medical care [was] sufficiently serious." (M&O at 16-17.) This statement was based on Plaintiff's claim that the delay in referring him to a specialist allowed his arthritis to spread to his left hip to the point where a doctor suggested he consider hip replacement surgery. (Id.) The court noted that this allegation, if proven true, would be similar to cases in which other courts have found a delay in medical care to be sufficiently serious. (Id. at 17 (collecting cases).) The court also noted that Plaintiff's claim may have been bolstered, albeit not in a "dispositive" manner, by the fact that Massillon "eventually saw fit to refer Plaintiff to the orthopedic specialist in April 2012." (Id. at 16.)

Defendants have not rebutted any of the court's statements regarding this aspect of Plaintiff's claim. In their brief in support of the Motion, they do not contest or even mention the question of whether Plaintiff has satisfied the objective prong: The Motion disputes solely whether Defendants possessed the requisite culpable state of mind to satisfy a deliberate indifference claim. (See Defs. Mem. at 3-5.) Because there is evidently no dispute as to whether Plaintiff has satisfied the pleading requirements for the objective prong of his deliberate indifference claim, the court considers this issue undisputed for the purposes of the Motion. See

Fed. R. Civ. P. 56(e)(2). Defendants' motion for summary judgment thus turns on whether Plaintiff met his burden under the subjective prong.

ii.     <u>Mens Rea</u> Prong

At the motion-to-dismiss stage, the court found plausible Plaintiff's allegation that the Individual Defendants "declined to refer Plaintiff for an orthopedic consultation over a period of four months pursuant to a policy of the City and/or Corizon to delay treatment to save money." (M&O at 18.) The court noted, however, that it could become clear, at another stage in the litigation, that Plaintiff's claims are "not adequately supported." (<u>Id.</u> (citing <u>Chance</u>, 143 F.3d at 703).) That stage has come: Because Plaintiff has not put forward adequate proof that the remaining Individual Defendants acted with the requisite <u>mens rea</u> to support Plaintiff's claim of deliberate indifference, the court must grant the motion for summary judgment.

Since alleging that his delayed referral was due to financial concerns, Plaintiff has put forth no evidence through the discovery process—no depositions, no additional records pertaining to his delayed referral—to upset this conclusion.[5] In his brief, Plaintiff again repeats his claim that Defendants told him there was no specialist available who could help him, something that he claims is a lie based on the fact that he was eventually referred to a specialist. (Pl. Opp'n to Summ. J. at 5; <u>cf.</u> Pl. Opp'n to Mot. to Dismiss at ECF p.12.) But Plaintiff does not offer any information about who told him this, when he or she said it, and what was the context in which this statement was made. Even with additional contextual information, this remark would not be enough to support Plaintiff's deliberate-indifference claim because it does

---

[5] Plaintiff attempted to secure an affidavit from a physical therapist at the BKDC, but the affidavit was not returned or signed by the affiant, nor would its subject matter have been relevant to the question before the court. (<u>See</u> Unsigned Aff. (Dkt. 97-2).) <u>Cf. Shepard v. Frontier Commc'ns Servs., Inc.</u>, 92 F. Supp. 2d 279, 285 (S.D.N.Y. 2000) (considering an affidavit that was submitted unsigned to the opposing party "because a signed copy was filed with the court").

not show that any of the Individual Defendants "knew, or should have known," that that the

condition "posed an excessive risk to [Plaintiff's] health or safety." Darnell, 948 F.3d at 35.

Further examination of the interactions between Plaintiff and the remaining Individual

Defendants does not lead Plaintiff's claim to fare any better. As to Ojudun, no facts suggest that

Plaintiff requested a referral from Ojudun, nor did Ojudun note any medical problems with

Plaintiff such that Ojudun should have known that the failure to make the referral posed an

excessive risk of harm to Plaintiff. (See Defs. 56.1 ¶¶ 9, 11; Defs. Suppl. Br. at ECF p.6.) The

court observes facts in the record showing that the other remaining Individual Defendants

examined Plaintiff and found problems with his back ranging from degenerative disc disease (id.

¶ 10) to mild tenderness (id. ¶¶ 12, 15). Even beyond the lack of evidence suggesting that any of

these Individual Defendants failed to refer Plaintiff to an orthopedic specialist because of

financial concerns, the court cannot conclude that any of their actions were reckless as to the risk

of harm to Plaintiff. Jeanty may not have referred Plaintiff to an orthopedic specialist, but his

decision to send Plaintiff for x-rays on multiple occasions certainly belies the contention that he

was "financially motivated" not to provide Plaintiff with "proper and timely medical attention"

(see Pl. Opp'n to Mot. to Dismiss at ECF p.1). (See Defs. Suppl. Br. at ECF p.8.) Finally, as for

Gilles and Alam, the court finds that they did not act with the requisite mens rea to support

Plaintiff's claim of deliberate indifference. Where a prisoner's x-rays show "no remarkable

results," failure to refer him to an orthopedic specialist does not amount to deliberate

indifference. See Ventura v. Sinha, 379 F. App'x 1, 3 (2d Cir. 2010) (summary order). That is

the case here, where Gilles and Alam observed only "mild" back tenderness with no other

abnormal symptoms. Even under the more lenient Fourteenth Amendment mens rea standard,

Gilles and Alam could not have been expected to know that their decision not to send Plaintiff to

a specialist posed an excessive risk to his health. "Accordingly, because [Plaintiff has] show[n] no more than that he disagreed with the course of treatment he received, his constitutional claim fail[s] as a matter of law." Id.

*   *   *

In sum, Plaintiff has failed to show a disputed issue of material fact sufficient to overcome Defendants' motion for summary judgment as to whether the Individual Defendants were deliberately indifferent to his medical needs. Accordingly, the court grants the motion for summary judgment and dismisses all claims against the Individual Defendants.

### 2. The Municipal Defendants

Plaintiff claims that the City and Corizon[6] should be held liable under 42 U.S.C. § 1983 for the Individual Defendants' alleged deliberate indifference to Plaintiff's medical needs. "[A] municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). "[T]o hold a city [or municipal actor] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007) (quotations and citation omitted) (alteration in original). The "policy or custom" requirement may be satisfied by showing any of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by

---

[6] Although Corizon is a private entity, it is the "functional equivalent" of the City because, by "providing medical care in prisons, Corizon performs a role traditionally within the exclusive prerogative of the state." Olmedo v. Corizon P.C., No. 14-CV-3853 (AT), 2015 WL 4002306, at *4 (S.D.N.Y. June 22, 2015) (internal quotation marks and citation omitted). Corizon thus "enjoys the benefit of the Monell requirements." Id.

> policy makers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

Skates v. Incorporated Village of Freeport, 265 F. Supp. 3d 222, 235 (E.D.N.Y. 2017).

In his response to Defendants' motion to dismiss, Plaintiff alleged that the City refused to refer him to a specialist because "the City of New York does not want to spend money on very necessary and important things." (Pl. Opp'n to Mot. to Dismiss at ECF p.19.) At that time, the court stated that Plaintiff should have a chance to discover "evidence of a formal policy or informal custom dictating such actions." (M&O at 21 (citing Jones, 557 F. Supp. 2d at 417).)

Although there are, as set out above, four ways to prove municipal liability, Plaintiff's complaint, liberally construed, only alleges liability pursuant to two of the methods: that there was a "formal policy" endorsed by the municipality; and that there was a "custom or usage" of which municipal policymakers must have been aware. Plaintiff does not allege that a City policymaker caused the deprivation of his constitutional rights, or that there was a failure to train.

### a.   Formal Policy

Since the partial denial of Defendants' motion to dismiss, Plaintiff has not brought any evidence to bear to refute Defendants' claim that they are entitled to judgment as a matter of law. As Plaintiff admits in his response to Defendants' motion for summary judgment, he "does not have and/or cannot produce an actual policy which would show that the Defendant[s'] actions of delaying the Plaintiff to a referral of an orthopedic/specialist were motivated by budgetary reasons." (Pl. Opp'n to Summ. J. at 4; see Defs. Reply at 4-5.) As far as making out a case for this prong of Monell liability is concerned, Plaintiff's admitted lack of evidentiary support for his legal claim against the Municipal Defendants is fatal to his opposition to the motion for summary

judgment. See Schroeder v. County of Nassau, 158 F. Supp. 3d 123, 131 (E.D.N.Y. 2016) (dismissing Monell claim because Plaintiff "has not offered any evidence that this allegedly improper conduct was attributable to a formal policy").

### b. Custom or Usage

Plaintiff's only hope is that the behavior to which he was exposed was so "persistent or widespread" that it rose to the level of a "custom or usage with the force of law." Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir. 2004) (citation omitted). To succeed on this type of claim, "a plaintiff must do more than simply state that a municipal policy or custom exists." Santos v. New York City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012). "Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." Id. Such evidence can include "municipal inaction[,] such as the persistent failure to discipline subordinates who violate [persons'] civil rights," Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (second alteration in original);

Plaintiff says that "[t]his court has found sufficient factual matter which was accepted as true to state this claim to relief which is plausible on its face" (Pl. Opp'n to Summ. J. at 5), but Plaintiff misunderstands the court's statements to this effect. In its prior opinion, the court said it was "plausible" that each Individual Defendant declined to refer Plaintiff for an orthopedic consultation pursuant to a municipal policy to delay Plaintiff's treatment to save money. (M&O at 18.) The court did so as a result of its mandate that, at the motion-to-dismiss stage, it accept as true all allegations of fact and draw all reasonable inferences from these allegations in favor of the plaintiff. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). In that context, "plausibility" means that there need only be "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 557 (2007)). The court noted at that time that, in order to survive summary judgment, Plaintiff would have to show that his claims were adequately supported by evidence. (M&O at 18 (citing Chance, 143 F.3d at 703).) The onus is on Plaintiff, following the partial denial of Defendants' motion to dismiss, to discover and bring to the court's attention evidence that would allow the court to conclude that the Defendants are not entitled to judgment as a matter of law.

In support of his claim, Plaintiff directs the court to a list of current and former prisoners who can "give/provide their own perspective of events when dealing with the aforesaid staff." (Pl. Opp'n to Summ. J. at 8.) The court construes this passage as an attempt by Plaintiff to provide evidence that his experience is indicative of a custom or policy to which other prisoners have been subjected. In order to rely on other individuals' cases to support the existence of a "custom or usage," the plaintiff must show that the custom was "widespread or well-settled," i.e., that it was "common or prevalent throughout the agency" or that the acts "achieved permanent, or close to permanent, status." See Davis v. City of New York, 228 F. Supp. 2d 327, 346 (S.D.N.Y. 2002). The simple recitation of other potentially similar cases, however, is not enough "to properly support an assertion of fact" that would lead the court to conclude that Plaintiff's constitutional rights were violated pursuant to an unofficial municipal custom. See Fed. R. Civ. P. 56(e); see also Ameduri v. Village of Frankfort, 10 F. Supp. 3d 320, 341 (N.D.N.Y. 2014) ("The Second Circuit and the district courts within the Second Circuit have held that a plaintiff's citation to a few lawsuits involving claims of alleged excessive force is not probative of the existence of an underlying policy by a municipality, police department, or department of corrections."); Kraft v. City of New York, 696 F. Supp. 2d 403, 420-21 (S.D.N.Y. 2010) ("Although plaintiff lists other cases in which other plaintiffs have made similar

allegations with respect to their involuntary hospitalizations, plaintiff alleges no facts and provides no evidence supporting a <u>Monell</u> claim." (internal citations omitted)). Here, Plaintiff has provided no facts about any of these cases, nor any evidence connecting the experiences of these prisoners to Plaintiff's alleged harm. <u>Cf.</u> <u>Kucharczyk v. Westchester County</u>, 95 F. Supp. 3d 529, 543-45 (S.D.N.Y. 2015) (permitting a deliberate-indifference <u>Monell</u> claim to proceed based on a report by the United States Department of Justice setting forth detailed reports of numerous medical care deficiencies at a single prison over the course of many years).

Plaintiff cites no further evidence to support his claim that the Municipal Defendants have a policy of refusing to refer patients to specialists for budgetary reasons. Instead, he says that the totality of his case, including facts underlying his other claims dismissed by the court, lead to the conclusion that "there's simply <u>no other explanation</u> (but monetary reasons) either medical or factual" for the denial of the treatment to which he claims he was entitled. (Pl. Opp'n to Summ. J. at 4.) This evidence—or lack thereof—is plainly insufficient to survive a motion for summary judgment. <u>Kulak v. City of New York</u>, 88 F.3d 63, 71 (2d Cir. 1996) ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment."); <u>see also</u> <u>Lizardo v. Denny's, Inc.</u>, 270 F.3d 94, 104 (2d Cir. 2001) (granting defendants' motion for summary judgment where "Plaintiffs have done little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race"). The court must reject Plaintiff's attempt to draw a causal link between Defendants' alleged conduct and Plaintiff's alleged harm based on nothing more than his unsupported hypothesis.

**B.     Discovery Objections**

Plaintiff also seeks to raise issues regarding the discovery process. (<u>See</u> Pl. Opp'n to Summ. J. at 9-10.) In particular, Plaintiff claims that Defendants failed to provide him with

discovery documents that he requested on the day of his deposition, as well as in writing. (Id.) The court rejects any claims that Plaintiff may be seeking to raise on this point.

During the period for discovery, only one deposition was taken: that of Plaintiff, by Defendants. (See Pl. Dep. (Dkt. 93-5).) At the end of his deposition, Plaintiff notified Defendants' counsel of his demand that Defendants:

> provide all the information as far as current and prior lawsuits against every one of the remaining defendants; public records such as Tax IDs, Social Security and license numbers for the purpose of background investigation on these defendants; and every piece of documentation and/or anything relating to this case that could help this case to be prosecuted.

(Id. 115:7-16.) Counsel for Defendants asked Plaintiff to put his request in writing; Plaintiff said that he would do so. (Id. 116:5-10.) Plaintiff has submitted as an exhibit to his opposition brief the copy of a handwritten letter addressed to defendants making such a formal request. (See Oct. 14, 2016, Letter (Dkt. 97-3).) The letter is dated October 14, 2016, ten days after Plaintiff's deposition. (Id.) In their reply affirmation, Defendants state that they "never received the handwritten discovery request" and that "[P]laintiff offers no proof that the request was ever mailed out" to Defendants' counsel's office. (Defs. Reply at 4.)

The discovery period concluded on October 28, 2016 (July 18, 2016, Order (Dkt. 77); Tr. of Dec. 7, 2016, Conf. ("Tr.") (Dkt. 91) at 2:20, 16:12), and Plaintiff returned corrections to his deposition transcript on December 20, 2016 (Pl. Dep. at 119; see Tr. at 16:6-7 (permitting Plaintiff to make corrections to the deposition transcript following the close of discovery)); however, the court was not made aware of Plaintiff's issue with the discovery process until the motion for summary judgment was fully briefed, the following year. Because Plaintiff failed to note any discovery disputes by the close of the fact discovery process, the court cannot now

entertain any objections he might wish to raise about Defendants' alleged lack of response to his letter. (See July 18, 2016, Order.)

## C. State-Law Claims

Because the court has dismissed all federal-law claims asserted by Plaintiff, it declines to exercise supplemental jurisdiction over any remaining state-law claims that may have been raised in Plaintiff's complaint.

Where a court dismisses all claims over which it has original jurisdiction, it may, in its discretion, decline to exercise supplemental jurisdiction over remaining claims. See 28 U.S.C. § 1367(c)(3). Courts generally decline to exercise supplemental jurisdiction over state-law claims if all federal-law claims have been dismissed prior to trial. See N.Y. Mercantile Exch., Inc. v. IntercontinentalExchange, Inc., 497 F.3d 109, 118-19 (2d Cir. 2007). The Supreme Court has stated that the determination of whether to exercise such jurisdiction should be guided by considerations of judicial economy, convenience, fairness, and comity. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988).

Here, consideration of the Cohill factors does not upset the presumption against the exercise of supplemental jurisdiction in this case. First, there is no gain in judicial economy to be achieved by retaining the claims, as this court has not yet considered any state-law claims raised by Plaintiff. Second, declining to exercise supplemental jurisdiction would not inconvenience or unfairly disadvantage any of the parties, particularly since all parties are located in New York. Third, none of the parties would be placed at a disadvantage by proceeding in state court. Finally, "given that only state-law issues remain in this case, comity dictates that the [c]ourt decline to decide those disputes." Jackson v. Barden, No. 12-CV-1069 (KPF), 2018 WL 340014, at *21 (S.D.N.Y. Jan. 8, 2018).

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. 92) is

GRANTED.  The Report and Recommendation (Dkt. 78) is ADOPTED.  To the extent that

claims in pro se Plaintiff's complaint are construed to arise under state law, those claims are

DISMISSED WITHOUT PREJUDICE.  The Clerk of Court is respectfully DIRECTED to enter

judgment and close this case.  The Clerk of Court is further respectfully DIRECTED to send a

copy of this memorandum and order to pro se Plaintiff at his address of record by certified mail,

return receipt requested.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York                        NICHOLAS G. GARAUFIS
      September _10_ , 2018                     United States District Judge